AO 102 (01/09)  Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Tracking of )<br>*(Identify the person to be tracked or describe* )<br>*the object or property to be used for tracking)* )<br>A WHITE HYUNDAI PALISADE BEARING NEW )<br>MEXICO LICENSE PLATE UNM49014, VIN# )<br>KM8R5DHEXLU045259 ) | Case No.  24-MR-1795 |

**APPLICATION FOR A TRACKING WARRANT**

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841 and 846__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ property designed for use, intended for use, or used in committing a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A WHITE HYUNDAI PALISADE BEARING NEW MEXICO LICENSE PLATE UNM49014, VIN# KM8R5DHEXLU045259

☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: __02/09/2025__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent David Zimmerman
*Applicant's printed name and title*

Telephonically sworn and electronically signed.

Date:  9/27/2024

*Judge's signature*

City and state:  Albuquerque, NM

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A WHITE HYUNDAI PALISADE BEARING NEW MEXICO LICENSE PLATE UNM49014, VIN# KM8R5DHEXLU045259 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Zimmerman, a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, do depose and hereby state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 authorizing the continued monitoring of a tracking device in or on a White Hyundai Palisade bearing New Mexico registration plate UNM49014, vehicle identification number KM8R5DHEXLU045259 (hereinafter "T. RUBALCABA VEHICLE"). Based on the facts set forth in this affidavit, I believe that T. RUBALCABA VEHICLE is presently being used in furtherance of violations of 21 U.S.C. § 841, that being distribution of narcotics and 21 U.S.C. § 846, that being conspiracy to distribute narcotics.

2. There is probable cause to believe that the continued monitoring of a tracking device in or on T. RUBALCABA VEHICLE will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) as a Special Agent of the Drug Enforcement Administration (DEA). As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

4. I have been a Special Agent with the Drug Enforcement Administration since May of 2020. I have attended the DEA Training Academy in Quantico, Virginia, where I received approximately fourteen weeks of specialized narcotics related training. As part of the curriculum at the DEA academy, I received advanced training in controlled substance identification, narcotics related investigation techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic monitoring techniques. I have received training in the methods of operation of Drug Trafficking Organizations, and in the investigation of Title 21 violations. Prior to becoming a Special Agent with the DEA, I was a sworn Law Enforcement Officer with the Boulder Police Department and the Aurora Police Department in the state of Colorado. I began my career as a Colorado Law Enforcement Officer in December of 2013. I was tasked in conducting investigations of Colorado Revised Statute violations, and have authored arrest warrants and search warrants for residences, cell phones, and social media platforms, resulting from drug investigations. As a result, I am familiar with matters including, but not limited to, the means and methods used by individuals to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF PROBABLE CAUSE

6. Between September of 2021 and August of 2024, agents have been investigating the illegal drug trafficking and money laundering activities of brothers Joaquin Rubalcaba (hereinafter "J. RUBALCABA") and Tomas Rubalcaba (hereinafter "T. RUBALCABA"), based in Albuquerque, New Mexico.

7. Throughout the investigation, agents have learned of additional co-conspirators involved in the RUBALCABA's drug trafficking organization, to include Humberto Gastelum (hereinafter "H. GASTELUM") who as discussed further below.

## UC/CS CONTROLLED PURCHASE IN JANUARY 2024

8. On January 17, 2024, a DEA agent, acting in a UC capacity, accompanied by a DEA Confidential Source (CS)[1], met with T. RUBALCABA and J. RUBALCABA in Albuquerque, NM, to purchase a half-kilogram of cocaine. At this meeting, T. RUBALCABA arrived at the meet location in a white Hyundai Palisade SUV bearing NM license plate UNM49014, which is registered to T. RUBALCABA at 8401 Rushing Brook Avenue SW, Albuquerque, NM, with VIN number KM8R5DHEXLU045259 (T. RUBALCABA VEHICLE). T. RUBALCABA provided the DEA CS with 518.8 gross grams of cocaine. The CS handed $8,500 of DEA Official Advance Funds to T. RUBALCABA, witnessed by the UC, at the driver's side window of T. RUBALCABA VEHICLE. The UC observed T. RUBALCABA hand J. RUBALCABA, who was seated in the right passenger seat of T. RUBALCABA VEHICLE, the $8,500. The UC observed J. RUBALCABA count the money. The UC told J. RUBALCABA to

---

[1] The CS's information has proven to be credible and reliable and has never found to be untruthful. The CS is working for consideration for his/her pending federal drug trafficking case. Investigators have independently verified intelligence information provided by the CS.

3

count the money to assure the entire amount of $8,500 was complete. J. RUBALCABA counted the money and told the UC that the entire $8,500 was complete. The drug deal was completed, and the UC left the location. The CS later departed from the area. Surveillance observed T. RUBALCABA VEHICLE arrive at T. RUBALCABA's business, Albuquerque Classics, located at 7901 Ranchitos Loop NE, Albuquerque, NM. Agents know T. RUBALCABA uses his shop to facilitate drug transactions, as agents later conducted controlled purchases at the shop.

9. Investigators field-tested the cocaine and confirmed it tested positive for the presence of cocaine. In my training and experience 518.8 gross grams of cocaine in a distributable amount and not personal use.

## UC CONTROLLED PURCHASE INVOLVING T. RUBALCABA VEHICLE IN FEBRUARY 2024

10. On February 2, 2024, agents coordinated a controlled purchase with a UC and T. RUBALCABA. T. RUBALCABA advised the UC to go to the shop and provided the UC with the address of 7901 Ranchitos Loop NE, Albuquerque, NM. Agents conducted surveillance on T. RUBALCABA prior to the meet and observed T. RUBALCABA VEHICLE located at 1020 Stinson ST SW, Albuquerque, NM. Agents observed T. RUBALCABA VEHICLE leave the Stinson residence and arrive at the shop carrying a large tan Gucci-style backpack and enter the business.

11. Shortly after, the UC arrived at the shop and agents observed T. RUBALCABA exit the business and motion for the UC to come towards the business. The UC asked T. RUBALCABA if he had fentanyl pills to purchase but T. RUBALCABA stated he only had cocaine and heroin. The UC informed T. RUBALCABA that he would purchase heroin. T. RUBALCABA informed the UC that he would contact him when the drugs would be ready.

Subsequently, the UC left, and agents observed T. RUBALCABA leave in T. RUBALCABA VEHICLE shortly after. Agents observed T. RUBALCABA travel to various locations prior to arriving at his known residence located at 8401 Rushing Brook Avenue SW, Albuquerque, NM.

12. After receiving confirmation that the drugs were ready to purchase, the UC returned to the shop and completed a controlled purchase with T. RUBALCABA's associate, H. GASTELUM. The UC purchased approximately 187.2 gross grams of heroin, which tested presumptive positive as heroin.

13. Based on my training, experience, and the investigation thus far, I believe T. RUBALCABA utilizes other individuals, such as H. GASTELUM, to conduct drug transactions on his behalf. Furthermore, I believe H. GASTELUM is a co-conspirator of the RUBALCABA DTO and that they facilitate drug transactions from Albuquerque Classics in an attempt to avoid law enforcement detection.

14. Agents have conducted surveillance and routine spot checks on known locations of T. RUBALCABA and know that T. RUBALCABA is still utilizing T. RUBALCABA VEHICLE as a primary vehicle. As recently as July 2, 2024, agents completed a controlled purchase of methamphetamine with a UC that was coordinated through T. RUBALCABA, but completed the transaction with Ismael Vargas. Agents observed T. RUBALCABA at the shop prior to the controlled purchase utilizing T. RUBALCABA VEHICLE.

## ONGOING INVESTIGATION AND CHALLENGES INSTALLING PREVIOUSLY AUTHORIZED TRACKING DEVICE

15. On August 5, 2024, the Honorable Judge Steven C. Yarborough authored a tracker warrant to allow agents to place a tracker on T. RUBALCABA VEHICLE (MR 24-1452) within ten days of the issuance of the warrant. Agents were unable to install the tracking device within

the requisite ten days. Agents were unable to install the tracking device within the authorized time because installation required covert tactics and selective opportunities which agents did not encounter.

16. On August 9, 2024, the Honorable Kea Riggs, United States District Judge for the District of New Mexico, issued an order authorizing the interception of wire and electronic communications to and from (505) 918-5192 (T. RUBALCABA PHONE 1), (505) 217-6270 (T. RUBALCABA PHONE 10), and (505) 518-5490 (J. RUBALCABA PHONE 1). Interceptions began on Augst 10, 2024, and are ongoing at this time.

17. On August 5, 2024, SA Zimmerman authored a GPS tracking device which was signed by the Honorable Judge Steven C. Yarbrough. See, MR-24-1511. Agents were permitted to monitor the tracking device until September 28, 2024. On August 14, 2024, agents successfully installed the GPS tracking device on T. RUBALCABA VEHICLE and have been monitoring it since. Agents believe the tracking device is still installed on or in T. RUBALCABA VEHICLE.

18. Throughout the T-III interceptions on T. RUBALCABA's telephone, agents continued to identify co-conspirators of T. RUBALCABA as well as utilized the GPS tracker to assist agents in locating T. RUBALCABA during suspected drug transactions and surveillance. Agents know T. RUBALCABA to utilize multiple residences, stash locations, and businesses to operate T. RUBALCABA's drug trafficking operation. Agents believe it is necessary to continue to utilize the GPS tracking device for maximum effectiveness in the investigation.

19. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the Court authorize continued monitoring, maintenance, and removal of the tracking device during both daytime and nighttime hours. During surveillance of T. RUBALCABA VEHICLE, agents have determined that the vehicle is often parked on the

street in areas of high traffic and heavy public presence during daylight hours, which presents a physical risk to the executing officer(s) installing, maintaining, and removing the tracking device, as well as a risk of compromising the investigation.

20. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five days following issuance of the warrant. The tracking device may produce location signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to continue monitoring a tracking device in or on T. RUBALCABA VEHICLE within the District of New Mexico, and to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the T. RUBALCABA VEHICLE after the use of the tracking device has ended.

22. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for ninety days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. As noted above, there is an active wiretap investigation into this DTO, with T. RUBALCABA being one of the main targets coordinating the sale of illegal narcotics. Targets are known to be security conscious and are connected to each other in different roles of the DTO. Agents believe that if T. RUBALCABA were to be notified it

would cause the rest of the DTO to react and possible change residences, stash houses, and/or change phone numbers, or possibly relocate. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

23. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Drug Enforcement Administration, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

24. This affidavit has been reviewed and approved by Assistant United States Attorney Joseph M. Spindle.

                                                Respectfully submitted,

                                                David Zimmerman
                                                Special Agent
                                                U.S. Drug Enforcement Administration

Telephonically sworn and electronically signed before me on this __27th__ day of September 2024.

_____
THE HONORABLE B. PAUL BRIONES
United States Magistrate Judge